UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JOSEPH W. DAVENPORT, ET AL

CIVIL ACTION

VERSUS

NO. 07-928-BAJ-SCR

HAMILTON, BROWN & BABST, LLC,
ET AL

-consolidated with-

PATRICK J. CUNNINGHAM, ET AL

CIVIL ACTION

VERSUS

NO. 08-52-BAJ-SCR

INTERNATIONAL BUSINESS MACHINES
CORPORATION, ET AL

**RULING**

This matter is before the Court on motions by Defendants, Hamilton, Brown

& Babst, LLC; Lowe, Stein, Hoffman, Allweiss & Hauver, LLP, and Lamothe &

Hamilton, PLC (collectively, "Defendants"), for Partial Summary Judgment

Concerning Conversion Claim (doc. 85); for Partial Summary Judgment Concerning

Claim of 25% Fee Interest (doc. 87); and for Partial Summary Judgment Requesting

Dismissal of Joint Venture Claim.[1]  Also before the Court is a motion by Plaintiffs,

Joseph W. Davenport; Hull, Towill, Norman, Barret & Salley, P.C.; and Jerry A.

---

[1]Plaintiffs in the lead case (07-928-BAJ-SCR) are defendants-in-intervention in the
removed case (08-52-BAJ-SCR), whereas Defendants in the lead case are plaintiffs-in-
intervention in the removed case.  For purposes of simplicity and clarity, the Court herein will
refer to the Plaintiffs in the lead case (defendants-in-intervention in the member case) as
"Plaintiffs," using the uppercase to distinguish them from the class action plaintiffs in the
*Cunningham* case.  For the same reasons, the Court will refer to the defendants in the lead
case (plaintiffs-in-intervention in the member case) as "Defendants," again using the
uppercase.

Landers (collectively, "Plaintiffs") for Summary Judgment (doc. 90). All of the above motions are opposed (docs. 113, 100, 98, 99 & 97). Defendants have replied to the opposition to the motion for partial summary judgment on the joint venture claim (doc. 118), and Plaintiffs have filed a surreply (doc. 121). Jurisdiction is based on 28 U.S.C. § 1332.

## BACKGROUND

This matter involves a dispute over the proper allocation of $9,700,000.00 in aggregate attorneys' fees that were awarded on October 1, 2007, by the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana, after a class action settlement in *Cunningham v. International Business Machines Corporation.*[2] The facts out of which the dispute arose, however, extend back well beyond the date of the award.

On April 4, 1994, Plaintiffs filed a class action complaint against International Business Machines Corporation ("IBM") in the Superior Court of Cobb County, Georgia. The complaint alleged that IBM had improperly revoked or suspended a retirement benefit that it had earlier offered to certain employees who had participated in an early retirement and leave program. That action, captioned *Kemp v. International Business Machines Corporation*, was filed on behalf of plaintiffs residing in twenty-two states and the District of Columbia, but on July 27, 2000, the

---

[2]*Patrick J. Cunningham and Anton N. Zanki v. International Business Machines Corporation*, 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, Division D, Docket Number 421-453.

Georgia Court of Appeals held that the class in *Kemp* had not been properly certified. (Docs. 90-2 & 97-1; ¶¶ 1-11).

Prior to the initiation of the *Kemp* case, however, Plaintiff, Joe Davenport, sought to bring a similar action in Louisiana on behalf of class action plaintiffs in states not represented by the putative class in *Kemp*. To that end, Davenport met with Defendant, Charles Hamilton, and introduced him to potential class action plaintiffs, and the two attorneys discussed the prospect of filing a second class action in Louisiana (docs. 87-2 & 103, ¶ 1; docs. 90-2 & 97-1, ¶¶ 14-16). On February 3, 1994, Hamilton and Davenport agreed that, if Hamilton or his firm used the information disclosed during the discussions to initiate any action against IBM independently of Davenport, then Davenport would "receive a twenty-five percent share of any attorney fees derived from any such independent action" (docs. 87-2 & 103, ¶¶ 3-5; 90-2 & 97-1, ¶ 19). On June 20th of that year, Davenport and Hamilton agreed that, in return for Plaintiffs' "assistance in commencing the Louisiana action, and thereafter," Plaintiffs would receive ten percent of the gross fees that might be awarded in the Louisiana litigation (docs. 87-2 & 103, ¶ 9; 90-2 & 97-1, ¶18). On October 16, 1995, Defendants filed the class action petition in *Cunningham* (docs. 90-2 & 97-1, ¶ 20).

After the Georgia Court of Appeals ruled that the class in *Kemp* had not been properly certified, Plaintiffs and Defendants agreed that the petition in *Cunningham* should be amended to expand that class to include class action plaintiffs "in all of the

states listed in the Georgia complaint (docs. 87-2 & 103, ¶15; docs. 90-2 & 97-1, ¶¶ 23-24). The *Cunningham* petition was, therefore, amended, and, on August 24, 2001, the court in *Cunningham* certified an expanded class that included class action plaintiffs in all states and the District of Columbia (docs. 90-2 & 97-1, ¶ 25). Defendants continued to serve as lead counsel in *Cunningham* until that action was settled through mediation during the summer of 2007 and the state court approved the settlement, entered judgment, and awarded class counsel an aggregate fee of $9,700,00.00. (Docs. 90-2 & 97-1, ¶¶ 27-28, 34-35).

Class counsel, however, failed to agree on the allocation of the award of attorneys' fees, and, on November 19, 2007, Defendants filed a petition of intervention in the state court action seeking to have the state court rule on the issue. On December 7, 2007, Plaintiffs filed a complaint in this Court seeking declaratory judgment to determine the rights of the parties with regard to the allocation of attorneys' fees. (07-928-BAJ-SCR, doc. 1). On January 25, 2008, and before the state court ruled on the allocation issue, Plaintiffs removed the state court action (08-052-BAJ-SCR, doc. 1). On March 18, 2008, the two cases were consolidated (doc. 20).

Plaintiffs amended their complaint on May 8, 2008, and then again on May 12, 2008 (docs. 37 & 39, respectively). In addition to the declaratory judgment claim (doc. 39, ¶ 40), Plaintiffs claim that they were joint venturers with Defendants and are therefore entitled to half of the contingency bonus portion of the award (doc. 37,

¶ 40), but in the alternative, Plaintiffs seek an award of twenty-five percent of the fee awarded in *Cunningham* (*Id.* at ¶ 41). Plaintiffs further allege that Defendants "misappropriated and/or converted to themselves or to others, 50% of the remaining $6,904,478 belonging to the [P]laintiffs," and they seek to recover $3,452,239.00 along with interest thereon (doc. 37, ¶¶ 43-44).

## LAW AND DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Independent School District*, 113, F.3d 528 (5th Cir. 1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986). The non-movant's burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential

to that party's case." *Celotex Corp. V. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## CLAIM OF JOINT VENTURE

"A joint venture, like a partnership, is a juridical person, distinct from its partners, created by an agreement between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit." *Scheffler v. Adams and Reese, LLP*, 950 So.2d 641, 648 (La.2007) (citing *Broadmoor, LLC v. Ernest N. Morial New Orleans Exhibition Hall Authority*, 867 So.2d 651, 663 (La.2004)). "Since the essential elements of a joint venture and a partnership are the same, joint ventures are generally governed by partnership law." *Joyner v. Liprie*, 33 So.3d 242, 251 (La.App. 2 Cir. 2010) (citing *Riddle v. Simmons*, 922 So.2d 1267 (La.App.2 Cir.), *writ denied*, 929 So.2d 1259 (La.2006); *Broadmoor, LLC*, 867 So.2d 651). "[P]artnership agreements are not presumed, but must result from the specific intent or consent to form a relationship with the legal effects of a partnership, including mutual contribution to partnership losses." *Venable v. Liberty Mutual Ins. Co.*, 142 So.2d 639, 651 (La.App.3 Cir. 1962).

For a joint venture to exist, the parties must agree or specifically intend to collaborate at mutual risk for their common profit or commercial benefit. Plaintiffs, however, have not set forth evidence to establish a genuine issue of fact as to whether the parties agreed or specifically intended to collaborate at mutual risk in the

*Cunningham* case.   Therefore, the Court concludes that Plaintiffs have failed to establish a genuine issue of fact with regard to an essential element of their claim under Louisiana's law of joint venture.[3]

Accordingly, the Court shall grant Defendants' Motion for Partial Summary Judgment Requesting Dismissal of Joint Venture Claim and shall deny Plaintiffs' Summary Judgment Motion insofar as it seeks summary judgment in favor of Plaintiffs with regard to the joint venture claim.

## CLAIM OF 25 PERCENT FEE INTEREST

Plaintiffs argue that, if the parties were not engaged in a joint venture, then Plaintiffs, under an agreement made between Joseph Davenport and Charles Hamilton, are entitled to twenty-five percent of the attorneys' fee award in *Cunningham.*   Pursuant to Uniform Local Rules 56.1[4] and 56.2,[5] it is undisputed for

---

[3]The Court also notes that, not only has no evidence been set forth to establish that the parties agreed or intended to collaborate at mutual risk, but the undisputed facts established pursuant to LR. 56.2 (see *infra,* n. 5) indicate that Defendants bore the financial risk in the *Cunningham* case.  *See* (docs. 90-2 & 97-1, ¶ 27) (establishing, pursuant to LR 56.2, that "[Defendants] . . . advanced out-of-pocket costs once Cunningham was expanded to include all states").  The undisputed facts further establish for purposes of the motions that, instead of agreeing to share equally in the profit, the parties agreed that Defendants, in return for "assistance in the commencement of the Louisiana case, and thereafter," would pay to Plaintiffs ten percent of the gross fees they might receive in the *Cunningham* case (docs. 90-2 & 97-1, ¶ 18).

[4]LR 56.1 provides:
> Every motion for summary judgment shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue  to be tried.

[5]LR 56.2 provides:
> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of

purposes of the present motions for summary judgment that "Hamilton memorialized the interim agreement in a February 3, 1994 letter to Davenport" which provides, in pertinent part:

> In connection with our brief telephone discussions of Wednesday and Thursday, I am writing to express my interest in discussing further with you the possibility of working with you in connection with the prosecution of litigation on behalf of an aggrieved class against IBM. As a prelude to our more detailed discussions of the substance of the matter, I am writing to confirm that all information that I receive from you in these discussions will be treated as confidential information which is not to be shared with any person outside our law firm prior to our concluding an agreement to work with you on this matter. I confirm our understanding that I (and my firm) will not use that information to independently begin or prosecute any action against IBM and that, in the event that any such action should be initiated by me (or by my firm) independently of you, you will receive a twenty-five percent share of any attorney fees derived from any such independent action.
>
> As I have indicated, I have no intention of engaging in any independent action.  Of course, once the outlines of litigation are disclosed to us, we will be better able to evaluate whether our office will be able to work with you in this matter and to determine the basis on which responsibilities and therefore fees can be shared.  In the event that we are unable to reach an agreement under which our office will work with you, I will return to you any documentary information which you have provided to me and will make no independent use of the information that you have provided.

---

the material facts as to which there exists a genuine issue to be tried.  All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

(Docs. 87-2 & 103, ¶ 5).[6]

The undisputed facts also provide that:

1.      On June 20, 1994, Davenport "confirmed" to Hamilton that Plaintiffs were in a position to offer him participation in the case upon the conditions that he would agree to share with Plaintiffs ten percent of the gross attorney fees that might be awarded and that he would agree not to bring any action in the case in states in which Plaintiffs filed suit.  (Docs.  87-2, 103 & ¶ 9).[7]

2.      Hamilton agreed to those terms (*Id.* at ¶10).[8]

---

[6]*See also* (docs. 90-2 & 97-1) establishing that Hamilton agreed to pay Plaintiffs twenty-five percent of any fees received if he pursued litigation against IBM independently of Plaintiffs. (Docs. 90-2 & 97-1, ¶ 19).

[7]According to the undisputed facts, the specific language of the offer, is as follows:
> This is to confirm that we are now in a position to offer you participation in subject case.  The terms of that participation which we recommend are as follows:
> * * *
> You will share with me and my co-counsel in Georgia, 10% of the gross attorneys' fees you are awarded if you and your [class action] plaintiffs prevail.
> * * *
> You will not bring any actions in this case in states in which we [Plaintiffs] are filing.

(Docs.  87-2 & 103, ¶ 9).

[8]*See also*, (docs. 90-2 & 97-1) establishing that:

> In return for [Plaintiffs] giving assistance in the commencement of the Louisiana case, and thereafter, Mr. Hamilton and his firm agreed in a June 20, 1994 letter that the [Plaintiffs] would receive 10% of the gross fees that might be awarded to the class of plaintiffs in the Louisiana litigation regarding the states not covered in *Kemp*; and

> Mr. Hamilton also agreed that if litigation against IBM was pursued independently of Plaintiffs, he would pay Plaintiffs 25% of fees received.

(Docs. 90-2 & 97-1, ¶¶ 18, 19, respectively).

3.  Plaintiffs and Defendants agreed that the Louisiana petition should be amended to add [class action] plaintiffs from the states listed in the Georgia complaint, and the petition was so amended to include [class action] plaintiffs from the states listed the complaint in *Kemp*. (Docs. 87-2 & 103, ¶¶ 15-16; docs. 90-2 & 97-1, ¶¶ 24-25).

4.  Hamilton moved to allow Davenport to appear *pro hac vice* in *Cunningham*, and Davenport was so admitted. (Docs. 87-2 & 103, ¶ 17; docs. 90-2 & 97-1, ¶ 44.

Although the foregoing undisputed facts establish that Hamilton agreed to pay Plaintiffs a twenty-five percent fee interest if he or his firm "independently beg[a]n or prosecute[d] any action against IBM," they also establish that Hamilton and Plaintiffs subsequently agreed to terms under which Hamilton was permitted to institute the action against IBM.  The undisputed facts further establish that the *Cunningham* case was prosecuted with Davenport admitted *pro hac vice*.

Accordingly, the Court concludes that Plaintiffs have failed to establish a genuine issue of material fact with regard to their claim of a twenty-five percent fee interest, and Defendants' Motion for Partial Summary Judgment Concerning Claim of 25% Fee Interest shall be granted and Plaintiffs' Summary Judgment Motion shall be denied insofar as it addresses the claim of twenty-five percent fee interest.

## CLAIM OF CONVERSION

Because Plaintiffs assert a tort claim under Louisiana law, Louisiana substantive law applies.  "Questions of Louisiana law are resolved 'the way the Louisiana Supreme Court would interpret the [law] based on precedent, legislation, and relevant commentary.'" *Molden v. Georgia Gulf Corp.*, 465 F.Supp.2d 606, 610

(M.D.La. 2006) (quoting *Occidental Chemical Corp. V. Elliott Turbomachinery Co., Inc.*, 84 F.3d 172, 175 (5th Cir. 1996)).[9]

"Generally, 'conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion.'" *New Orleans Jazz and Heritage Foundation, Inc. v. Kirksey*, 40 So.3d 394, 405 (La.App. 4 Cir.) *writ denied*, – So.3d –, (La.2010). "[I]n Louisiana, tortious activity is only established upon proof of fault under La. C.C. art. 2315." *Id.* (citing *Dual Drilling*, 721 So.2d at 857, n. 3). "A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over

---

[9]Defendants, in support of their Motion for Partial Summary Judgment Concerning Conversion Claim, and Plaintiffs, in their opposition to the motion (Plaintiffs' motion for summary judgment did not address the claim of conversion), cite jurisprudence which does not to conform to the clear guidance set forth by the Fifth Circuit Court of Appeals and the Louisiana Supreme Court for the analysis of conversion claims under Louisiana law.  See *Louisiana v. Guidry*, 489 F.3d 692 (5th Cir. 2007) in which the Fifth Circuit Court of Appeals quoted the Louisiana Supreme Court as follows:

> Despite the use of this common law term, such actions are not to
> be confused with the civil law tort of conversion.  In common law
> jurisdictions, conversion is an intentional wrong giving rise to strict
> liability in an action for the recovery of the value of a chattel.
>
> . . . .
>
> "and the absolute liability which characterizes [common law]
> conversion is in direct conflict with Article 2315 of the Louisiana
> Civil Code and the principle that liability for wrongful
> dispossession rests on fault."

*Id.*  at 702 (quoting, *Dual Drilling Co. v. Mills Equipment Investments, Inc.*, 721 So.2d 853, 857, n. 5 (La.1998) (*quoting,* A.N. Yiannopoulos, *Louisiana Civil Law Treatise* §§ 357, 359 at 690-92, 695).

it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel." *Id.* (citing *II Fire Records, L.L.C. v. Clouden,* 951 So.3d 1271 (La.App. 4 Cir. 2007) (quoting *Dual Drilling,* 721 So.2d at 857)).

Defendants argue that they are entitled to summary judgment on Plaintiffs' claim of conversion because Plaintiffs "do not yet have a possessory right to any of the funds; they only have a *claim* to such a right" (doc. 85-2, p. 4 (emphasis in original)). In further support of their argument, Defendants assert that "[b]ecause of the out-of-state lawyers' removal of the case, we still do not even know how much of the fee that they might be entitled to." (*Id.*). Thus, the motion by Defendants for partial summary judgment dismissing the conversion claim is grounded in their assertion that a genuine issue of fact exists as to whether, and "how much of the fee [Plaintiffs] are entitled to." Accordingly, the Court concludes that summary judgment on the claim of conversion is inappropriate at this time and Defendants' motion for summary judgment on the claim of conversion shall be denied.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion for summary judgment, (doc. 90) is **DENIED**; Defendants' motion for partial summary judgment on the conversion claim (doc. 85) is **DENIED**; Defendants' motion for partial summary judgment on the twenty-five percent fee interest claim (doc. 87) is **GRANTED**; Defendant's motion for partial summary judgment on the claim of joint venture (doc. 89) is hereby **GRANTED**.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' claim of a twenty-five percent fee interest is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that the claim asserted by Plaintiffs pursuant to Louisiana's law of joint venture, is hereby **DISMISSED.**

Baton Rouge, Louisiana, November **8** , 2010.


_____
BRIAN A. JACKSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

13